<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

SHILDA N. WORTHY,

              Plaintiff,

      v.

NEW JERSEY DEPARTMENT OF HEALTH,
*et al.*,

              Defendants.

Civil Action No. 18-17346 (GC) (DEA)

**OPINION**

<u>**CASTNER, District Judge**</u>

    This matter comes before the Court upon Defendants New Jersey Department of Health and New Jersey Civil Service Commission's motion for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.  (ECF No. 72.)  Plaintiff Shilda N. Worthy filed no responsive papers. The Court has carefully considered the submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' motion is **GRANTED**.

**I.**      <u>**BACKGROUND**</u>[1]

    **A.**    **PROCEDURAL HISTORY**

    On December 18, 2018, Plaintiff sued the New Jersey Department of Health (NJDOH) and the New Jersey Civil Service Commission (NJCSC) for racial discrimination under Title VII of

---

[1]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party."  *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. §§ 10:5-1 *et seq.* (Count One); gender-based discrimination under NJLAD (Count Two); and retaliation (Count Three).  (ECF No. 1.)[2]

Following discovery, Defendants moved for summary judgment.  (ECF No. 72.)  Plaintiff did not file opposition papers, despite the Court giving Plaintiff an opportunity to do so out of time.  (ECF No. 77.)

**B.    FACTS UNDISPUTED[3]**

1.    PLAINTIFF'S RECLASSIFICATION REQUEST

Plaintiff began her employment with the NJDOH in November 1988 as a Public Health Representative.  (DSMF ¶ 3; Branch Cert. Ex. B, Pl. Dep. 9:12-21, ECF No. 72-5.)  In June 2007, Plaintiff began working in the Office of Minority and MultiCultural Health ("OMMH") as a Program Development Specialist 1.  (DSMF ¶ 6; Pl. Dep. 10:23-11:3.)

In February 2013, the NJCSC[4] approved the Program Development Specialist 1 title to be changed to Program Specialist 3, or "PS3."  (DSMF ¶ 7; Branch Cert. Ex. D, NJCSC Final

---

[2]    The Complaint does not include a separate count for hostile work environment, although it alleges that certain conduct "created a pervasive atmosphere of" race (Count One) and gender (Count Two) discrimination that "create[ed] a hostile environment."  (ECF No. 1 ¶¶ 38, 42.)  These allegations provided sufficient notice to Defendants of Plaintiff's intent to claim hostile work environment.  (*See* ECF No. 72-1 at 23-27 (seeking to dismiss "[a]ny allegations of hostile work environment").)  The Court therefore accepts that the Complaint raises a claim for hostile work environment.

[3]    Defendants' Rule 56.1 Statement of Material Facts Not in Dispute ("DSMF") is at ECF No. 72-2.

[4]    "Under the Civil Service Act, [N.J. Stat. Ann. §§ 11A:1-1 to 12-6]," the NJCSC "is delegated broad power over all aspects of the public employment career service," including the duty to "establish jobs, set qualifications for those jobs, administer tests to fill those jobs, and oversee and administer the candidate selection process."  *Spallacci v. Civ. Serv. Comm'n*, 2023 WL 5018012, at *1 (N.J. Super. Ct. App. Div. Aug. 7, 2023) (citing N.J. Stat. Ann. § 11A:4-8; N.J. Admin. Code. § 4A:3-3.1).

Administrative Action, ECF No. 72-7 at 2 n.1.[5])  As a result, Plaintiff's title changed from Program Development Specialist 1 to PS3.  (DSMF ¶ 8; ECF No. 72-7 at 3.)  This title-change did not affect Plaintiff's salary or status.  (DSMF ¶ 9; ECF No. 72-7 at 3.)

The NJCSC and NJDOH are different entities.  (DSMF ¶ 14; Branch Cert. Ex. C, Daniels Dep. 28:24-25, ECF No. 72-6.)  When NJDOH employees believe that they are "working beyond their pay grade," they may submit to NJCSC documents substantiating their claim that they should be "reclassified."  (DSMF ¶ 15; Daniels Dep. 11:18-25.)  The NJCSC reviews the submissions and determines whether the employee may be reclassified.  (DSMF ¶ 16; Daniels Dep. 11:24-12:1.)

In August 2016, Plaintiff submitted to NJCSC a request that she be reclassified to PS4 from PS3.  (DSMF ¶ 17; ECF No. 1 ¶ 18.)  Dr. Carolyn Daniels, Plaintiff's supervisor at NJDOH, signed off on Plaintiff's request, as was required for Plaintiff's job reclassification request to be processed.  (DSMF ¶ 18; Daniels Dep. 12:2-8.)

In late December 2016, NJCSC representative Robert Zakreski conducted a telephone desk audit related to Plaintiff's request.  (DSMF ¶ 21; ECF No. 1 ¶ 19.)  About a month later, Zakreski contacted Plaintiff and advised that she should rescind the paperwork for her reclassification request.  (DSMF ¶ 22; Pl. Dep. 23:7-18.)  Zakreski expressed "concern about the infrastructure of" OMMH and discussed the "R bargaining" versus the "S bargaining" unit policy.  (DSMF ¶ 23; Pl. Dep. 23:19-24:15.)  Plaintiff admittedly never looked into the differences between the R and the S bargaining unit, or the infrastructure of OMMH.  (DSMF ¶ 24; Pl. Dep. 24:2-25:4.)  Plaintiff testified that during neither the desk audit nor the month-later conversation did she believe that she had endured any discrimination.  (DSMF ¶ 25; Pl. Dep. 25:8-13.)

---

[5]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

In March 2017, Kevin Jennings, a NJDOH employee in the Management and Administrative Department, also advised Plaintiff that she should rescind her reclassification request, pointing to OMMH's structure and the bargaining unit.  (DSMF ¶¶ 26, 37; Pl. Dep. 25:14-19, 26:8-12.)  Plaintiff testified that she did not believe that Jennings was discriminating against her — "[h]e was giving [her] information."  (DSMF ¶ 27; Pl. Dep. 27:9-12.)

2.   NJCSC's Determination Letter

On or about April 10, 2017, Martha Bell, a human resources consultant in the Division of Agency Services, or "DAS," of the NJCSC, sent Plaintiff a determination letter regarding her reclassification request.  (DSMF ¶ 28; Branch Cert. Ex. E, Apr. 10, 2017 Determination Letter, ECF No. 72-7 at 8-11.)  The letter explained that Plaintiff's PS3 title is assigned to the "R" Bargaining Unit and, as such, is considered a first-line supervisor: "Incumbents holding titles assigned to the 'R' bargaining unit must supervise lower-level staff, including having responsibility for the preparation and completion of performance evaluations."  (DSMF ¶ 29; ECF No. 72-7 at 9.)  Because Plaintiff did not supervise any lower-level staff in this way, the letter advised, Plaintiff's title was "an inappropriate classification for [her] position."  (DSMF ¶ 30; ECF No. 72-7 at 9.)

The letter also stated that the PS4 title is assigned to the "S" Bargaining Unit and considered to be a second-line supervisor: "Incumbents holding titles assigned to the 'S' bargaining unit must supervise lower-level (first-line) supervisors."  (DSMF ¶ 31; ECF No. 72-7 at 9.)  Yet under OMMH's organizational structure, Plaintiff was not supervising any "lower-level (first-line)" supervisors.  (DSMF ¶ 32; ECF No. 72-7 at 9.)

The letter thus advised NJDOH, Plaintiff's employer, that Plaintiff's current position would be reclassified to PS1 unless NJDOH "assigns duties and responsibilities that are commensurate

with the position's current title, [PS3], within thirty days of receipt of this determination letter." (DSMF ¶ 33; ECF No. 72-7 at 10.)

On June 16, 2017, having learned of the NJCSC's determination, Jennings reached out to Dr. Daniels to discuss the prospect of transferring Plaintiff into a position equivalent to the one she then held.  (DSMF ¶ 37; ECF No. 1 ¶ 22; Daniels Dep. 15:10-19.)  The new position was in the Office of Vital Statistics and Records ("OVSR"), where Plaintiff would have a "PS3 role" with "staff that would report to her [and] that she would supervise."  (DSMF ¶ 39; Daniels Dep. 16:1-7.)  Dr. Daniels understood this transfer to be a lateral move "so that [Plaintiff] would not be demoted and lose pay."  (DSMF ¶ 38; Daniels Dep. 15:19-21.)[6]

Plaintiff appealed the DAS determination to the NJCSC Division of Appeals and Regulatory Affairs for final administrative review.  (DSMF ¶ 34; ECF No. 72-7 at 2.)  On July 19, 2017, the Division of Appeals upheld the DAS decision, determining that Plaintiff was properly reclassified to PS1.  The Division of Appeals noted, however, that because the NJDOH had reassigned Plaintiff to a vacant PS3 position in OVSR, no further action was required.  (DSMF ¶ 40; ECF No. 72-7 at 5.)

### 3.   PLAINTIFF'S REASSIGNMENT TO OVSR

On June 26, 2017, Plaintiff transferred from OMMH to OVSR.  (DSMF ¶ 10; ECF No. 1 ¶ 24.)  The original plan was that Plaintiff would work in the data generation area, or "DAG," under supervisors Twanda Walker-Valery and Yamileth Hernandez.  (DSMF ¶¶ 41, 44; Pl. Dep.

---

[6]     Dr. Daniels supported Plaintiff's request for reclassification, because although Plaintiff was not a supervisor in the organizational structure, Plaintiff played a supervisor-esque role for at least one employee in the group as well as for "all of the people in her grantee orbit."  (DSMF ¶ 19; Daniels Dep. 22:15-23.)  And although she disagreed with the denial of Plaintiff's request, Dr. Daniels did not feel that "someone with managerial authority did not like [Plaintiff] for some reason."  (DSMF ¶ 20; Daniels Dep. 23:14-22.)

36:2-16.)  OVSR's director, Vincent Arrisi, later told Plaintiff that she would instead work in the

data issuance area, or "DIA," under supervisor Damon Koslow.  (DSMF ¶¶ 42-43; Pl. Dep. 36:2-

5, 36:11-13, 56:19-57:3.)  Plaintiff testified that she did not believe that this change of plans was

discriminatory.  (DSMF ¶ 45; Pl. Dep. 42:2-5.)

Plaintiff describes Koslow as a condescending, disrespectful bully who "created a hostile

work environment" and whose "tone was always abrupt" — "[h]e talked at you, not to you or with

you."  (DSMF ¶ 49; Pl. Dep. 39:2-7.)  Plaintiff occasionally heard him talk to others in the same

manner.  (DSMF ¶ 50; Pl. Dep. 39:12-14.)  Plaintiff alleges that Koslow accused her several times

of performing work for her previous job.  (DSMF ¶ 47; Pl. Dep. 38:13-21.)  At her deposition,

Plaintiff could not recall how many times this happened.  (DSMF ¶ 48; Pl. Dep. 38:19-20.)

Plaintiff also testified that she did not believe that Koslow gave her assignments for discriminatory

reasons.  (DSMF ¶ 46; Pl. Dep. 42:6-15.)

In their last verbal exchange, Koslow accused Plaintiff of doing other program work, to

which Plaintiff responded: "[O]nce again, I'm not doing any other program work.  What I do on

my lunch hour and after work is my own business . . . ."  (DSMF ¶ 51; Pl. Dep. 40:10-23.)  Later

that day, Plaintiff began feeling ill and went to the doctor's office.  Plaintiff's blood pressure was

high, so she obtained a doctor's note, gave it to Arrisi's secretary, and left for the day.  (DSMF ¶

52; Pl. Dep. 40:19-41:23; ECF No. 1 ¶ 28.)

When Plaintiff returned to work on Monday, she received an email from the union

representative advising that human resources wanted to meet with her.  (DSMF ¶¶ 53-54; Pl. Dep.

44:16-21; ECF No. ¶ 29.)[7]  When Plaintiff met with human resources and the union rep, she

---

[7]     Plaintiff testified that before the meeting with human resources, Plaintiff had met with
Arrisi and Koslow to express "concerns with the director about [her] responsibilities," as she "had
not been oriented to the office, to the programs, to the duties and to the functions of the overall

discussed her job functions and what she had been doing for the past roughly three weeks.  (DSMF ¶ 57; Pl. Dep. 48:25-49:4.)  Plaintiff also discussed some of the issues and disagreements that she and Koslow had.  (DSMF ¶ 58; Pl. Dep. 49:19-25.)

The next day, Plaintiff was transferred from DIA to DAG, where she worked under Walker-Valery and Hernandez.  (DSMF ¶¶ 59-60; Pl. Dep. 36:6-10, 49:16-18, 50:5-10.)  Plaintiff had worked under Koslow in DIA for less than a month.  (DSMF ¶ 61; Pl. Dep. 40:5-9.)  Plaintiff testified that she does not believe that she was transferred for discriminatory reasons.  (DSMF ¶ 62; Pl. Dep. 51:4-17.)

While Plaintiff was working in DAG, Arrisi allegedly sent her and her team harassing emails about performing certain work duties.  (DSMF ¶ 63; Pl. Dep. 53:16-54:22, 55:8-11.)  Plaintiff attributed this mistreatment to her team's makeup: "mostly minorities and . . . women of color."  (Pl. Dep. 53:24-54:2.)  Though, Plaintiff testified that she does not know how Arrisi interacted with other employees or the contents of emails that Arrisi sent to other employees outside of her unit.  (DSMF ¶ 64; Pl. Dep. 55:12-18, 57:4-7.)

On December 20, 2017, after receiving an email from Arrisi, Plaintiff filed a Workplace Violence Incident Report, in which Plaintiff claimed that she "was harassed for not correcting a client's vital records for a Local Registrar in the OVSR Vital Information Platform (VIP) during Ms. Yamileth Hernandez's (supervisor) absence."  (DSMF ¶ 65; Branch Cert. Ex. J, Workplace Violence Incident Report, ECF No. 72-8 at 9-13.)  Plaintiff considered Arrisi's email to be harassing because he knew that neither she nor Walker-Valery had the resources to do what he

---

office."  (ECF No. 72-2 ¶ 55; Pl. Dep. 46:4-13, 46:21-25.)  Plaintiff told Arrisi that "working there in just that short period of time that was a hostile environment working with Damon," and that Koslow continuously accused her of doing other program work.  (ECF No. 72-2 ¶ 56; Pl. Dep. 47:13-20.)

was asking.  (DSMF ¶ 66; Pl. Dep. 62:8-20.)  Plaintiff also believed that Arrisi's email manifested race- and gender-based discrimination.  She reasoned that although Walker-Valery ranked higher than Koslow, Arrisi treated Koslow the same as Walker-Valery or, in some ways, better.  Plaintiff testified that "[Koslow] was giv[en] rights, administrative rights approval for all the systems.  He had all the documents.  [Walker-Valery] did not have the documents as a manager.  [Walker-Valery] was the program manager and Civil Service wise[,] [she] was over Damon, but [Arrisi] did not treat . . . [her] as being second in command."  (DSMF ¶ 67; Pl. Dep. 62:25-63:17.)

4.   Plaintiff's EEOC Charge

The NJDOH adopts New Jersey's Policy Prohibiting Discrimination in the Workplace. (DSMF ¶ 70; *see* Branch Cert. Ex. K, New Jersey State Policy Prohibiting Discrimination in the Workplace, ECF No. 72-8 at 14-27.)  The Policy proscribes discrimination or harassment in the workplace.  (DSMF ¶ 71; ECF No. 72-8 at 15, sec. I.a.)  In accordance with the Policy, the NJDOH provides ways in which an employee can report suspected violations of the Policy and the procedure for responding to a complaint.  (DSMF ¶ 73; ECF No. 72-8 at 19-20, sec. VI.)  Each State agency must distribute the Policy to all employees annually and post it in conspicuous work locations.  (DSMF ¶ 72; ECF No. 72-8 at 19, sec. V.)

Plaintiff never filed a complaint with the NJDOH's Equal Employment Office regarding Arrisi or Koslow.  (DSMF ¶¶ 68, 74; Pl. Dep. 63:20-23, 76:20-22.)

On April 19, 2018, Plaintiff filed with the United States Equal Employment Opportunity Commission a Charge of Discrimination against the NJDOH and the NJCSC.  (DSMF ¶ 75; Branch Cert. Ex. F, EEOC Notice of Charge of Discrimination, ECF No. 72-7 at 12-20.)  Plaintiff alleged discrimination based on race, age, and retaliation, noting the date of discrimination as June 26, 2017.  (DSMF ¶ 76; ECF No. 72-7 at 15.)  She alleged that the "discriminatory and retaliatory"

8

action was her reassignment from OMMH to OVSR following the reclassification of her job title. (DSMF ¶ 77; ECF No. 72-7 at 16, ¶ 5; *id.* at 17, ¶ 6.)  As proof, Plaintiff noted that a Latino, male colleague, Jose Gonzalez, "who held the same title and had less state service in the OMMH," was never transferred.[8]  (DSMF ¶ 77; ECF No. 72-7 at 16, ¶ 5; *id.* at 17, ¶ 6.)  Plaintiff also alleged that since the transfer, Koslow and Arrisi had created "a pervasive atmosphere of age, gender and race discrimination" as well as "a hostile work environment."  (DSMF ¶ 78; ECF No. 72-7 at 18, ¶ 14.)

In September 2018, the EEOC issued Plaintiff notices of dismissal and of her right to sue. The EEOC noted that it was "unable to conclude that the information obtained establishes violations of the statutes," but that "[t]his does not certify that the respondent[s] [are] in compliance with the statutes."  (DSMF ¶¶ 80-81; Branch Cert. Ex. H, EEOC Dismissal and Notice of Rights Re. NJCSC, ECF No. 72-8 at 1-4; Branch Cert. Ex. I, EEOC Dismissal and Notice of Rights Re. NJDOH, ECF No. 72-8 at 5-8.)

In October 2018, Plaintiff was promoted to program manager in the Bureau of Public Health Services.  (DSMF ¶ 11; Pl. Dep. 18:7-9, 18:16-20.)  This position is completely outside of the PS4 designation; it is a higher title.  (DSMF ¶ 12; Pl. Dep. 18:7-15.)  Plaintiff is currently the program manager in the office of Local Public Health, reporting to the director, and managing and overseeing staff that works with the local public health departments throughout the state.  Plaintiff oversees approximately fifteen people and directly supervises four.  (DSMF ¶ 13; Pl. Dep. 18:24-19:2, 19:15-20.)

---

[8]    Dr. Daniels testified that Plaintiff and Gonzalez did "pretty much" the same work.  (DSMF ¶ 35; Daniels Dep. 16:11-14.)  But because Gonzalez did not pursue reclassification, the NJCSC never evaluated what duties he was performing.  (DSMF ¶ 36; Daniels Dep. 16:14-15.)

## II.    <u>LEGAL STANDARD</u>

Under Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.,* 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

The moving party must establish that no genuine dispute of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). For "an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After that, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (listing types of evidence on which nonmoving party must rely to support that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). The nonmoving party's failure to provide "proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

Where, as here, the moving party files a proper statement of material facts and the nonmoving party fails to file a responsive statement of disputed material facts, the court may consider the moving party's statement of material facts undisputed and thus admitted for the purposes of the motion for summary judgment. Fed. R. Civ. P. 56(e)(2); L. Civ. R. 56.1; *see, e.g.*, *Hubbard v. Lanigan*, Civ. No. 18-2055, 2023 WL 4103996, at *3 (D.N.J. June 21, 2023) (citing *Ruth v. Selective Ins. Co. of Am.*, Civ. No. 15-2616, 2017 WL 592146, at *3 (D.N.J. Feb. 14, 2017)). In that event, a district court still must "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [defendants are] entitled to judgment as a matter of law" to grant summary judgment. *Ruth*, 2017 WL 592146, at *2 (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990)).

## III.   **DISCUSSION**

Plaintiff claims to have suffered two types of adverse actions: (1) she was demoted and transferred to another unit in retaliation for her refusal to rescind her reclassification request and despite Defendants' not demoting or transferring a Latino, male colleague (ECF No. 1 ¶¶ 36-37, 41, 44); and (2) she endured a hostile work environment through supervisors' harassing verbal and electronic communications and assigning Plaintiff below-level tasks (*id.* ¶¶ 27, 30).

Defendants move for summary judgment on Plaintiff's claims for seven reasons. First, Eleventh Amendment sovereign immunity bars Plaintiff's NJLAD claims. (ECF No. 72-1 at 13-15.) Second, NJCSC was never Plaintiff's employer. (*Id.* at 15-16.) Third, Plaintiff's Title VII claims arising before June 23, 2017, are time-barred. (*Id.* at 17-19.) Fourth, the Title VII and NJLAD claims fail because Plaintiff cannot establish that her transfer was due to discrimination.

(*Id.* at 19-22.)  Fifth, any claim of hostile work environment fails because the complained-of conduct was not due to discrimination.  (*Id.* at 23-27.)  Sixth, Plaintiff cannot establish a *prima facie* case of retaliation.  (*Id.* at 28-31.)  Seventh, and finally, Plaintiff cannot recover punitive damages.  (*Id.* at 31.)  The Court addresses these arguments out of turn.

## A.   CLAIMS AGAINST NJCSC

Defendants argue that NJCSC cannot be liable under Title VII or NJLAD because it was never Plaintiff's employer.  (ECF No. 72-1 at 15-16.)

Plaintiff's Title VII and NJLAD claims required Plaintiff to have an employer-employee relationship with Defendants.  *See Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013) ("In order to state a Title VII claim, [plaintiff] must allege an employment relationship with the defendants."); *Thomas v. Cnty. of Camden*, 902 A.2d 327, 334 (N.J. Super. Ct. App. Div. 2006) ("[T]he [NJ]LAD was intended to prohibit discrimination in the context of an employer/employee relationship." (quoting *Pukowsky v. Caruso*, 711 A.2d 398, 405 (N.J. Super. Ct. App. Div. 1998))).[9]

Here, the Complaint alleges only that "Plaintiff was an 'employee' of Defendant NJDOH." (ECF No. 1 ¶ 4.)  This allegation matches what Plaintiff reported in her Charge of Unlawful Discrimination with the EEOC: "My employer is the New Jersey Department of Health."  (ECF No. 72-7 at 16.)  There is no similar allegation as to NJCSC.  Plaintiff's failure to plead or demonstrate an employer-employee relationship with NJCSC is fatal to Plaintiff's Title VII and

---

[9]      "Under the NJLAD and Title VII, the analysis is essentially the same."  *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 282 n.13 (3d Cir. 2001); *see Syder v. Express Servs., Inc.*, Civ. No. 20-11013, 2023 WL 2674846, at *3 (D.N.J. Mar. 29, 2023) ("Claims brought under the NJLAD are generally subject to the same analysis as claims brought under [Title VII]." (citing *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999); *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993))).

NJLAD claims against NJCSC.  *See Thomas*, 902 A.2d at 334 ("[T]he lack of an employment relationship between the plaintiff and the defendant will preclude liability.").[10]

The Court must therefore grant summary judgment in favor of NJCSC on all of Plaintiff's claims.

### B.    TIME-BARRED TITLE VII CLAIMS

Defendants next argue that Plaintiff's Title VII claims arising from her reclassification and reassignment are time-barred.  (ECF No. 72-1 at 17-19.)

Before filing a Title VII suit, a plaintiff must exhaust all administrative remedies.  "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations."  *Daniels v. Dep't of Corr.*, Civ. No. 18-15375, 2019 WL 3451741, at *4 (D.N.J. July 31, 2019) (quoting *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)).  Because New Jersey has a "deferral agency" with authority to adjudicate a Title VII claim, "a plaintiff's complaint is . . . timely filed if received by the EEOC within 300 days from the date of the alleged violation."  *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 310 (D.N.J. 2005) (citing *Bishop v. New Jersey*, 84 F. App'x 220 (3d Cir. 2004); *Gona v. Coll. of Med. & Dentistry of New Jersey*, Civ. No. 83-3832, 1985 WL 391 (D.N.J. Feb. 4, 1985)).

The Third Circuit Court of Appeals treats the 300-day period as a statute of limitations. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 n.3 (3d Cir. 2001); *see Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999) (noting "claim filed even one day" late "is untimely and may be dismissed absent an equitable reason for disregarding this

---

[10]    Although "[a] plaintiff may be an employee of more than one entity," *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 134 (D.N.J. 2000), *see Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015) ("Two entities may be 'co-employers' or 'joint employers' of one employee for purposes of Title VII."), Plaintiff never alleged, and the record does not indicate, that NJCSC was her employer.

statutory requirement").  A discrimination claim accrues at "the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful."  *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).  Thus, "the charge-filing period begins to run on a claim of unlawful discrimination when the employer establishes its official position and communicates that position by giving notice to the affected employee."  *Scocozza v. New Jersey*, Civ. No. 14-2095, 2014 WL 6674453, at *4 (D.N.J. Nov. 25, 2014) (quoting *Bailey v. United Airlines*, 279 F.3d 194, 199 (3d Cir. 2002)).

Plaintiff's EEOC charge of discrimination notes that her claims arose in part from her reassignment to another unit following the reclassification of her job title.  (DSMF ¶ 77; ECF No. 72-7 at 16, ¶ 5; *id.* at 17, ¶ 6; *see also* ECF No. 1 ¶¶ 36-37, 41, 44.)

Defendants contend that for a claim based on her reclassification, the charge-filing period began to run on April 10, 2017, the date of NJCSC's letter notifying Plaintiff of the official position to reclassify Plaintiff from PS3 to PS1.  (ECF No. 72-7 at 8-11.)  From that date, Plaintiff had 300 days, or until February 4, 2018, to file an EEOC charge based on the reclassification.[11]

As to the reassignment, Defendants contend that the charge-filing period began to run on June 16, 2017, the date of the meeting at which Plaintiff was reassigned to OVSR.[12]  (ECF No. 72-1 at 18-19.)  Plaintiff then had 300 days, or until April 12, 2018, to file an EEOC charge based on the reassignment.

---

[11]    In her EEOC charge, Plaintiff reported that she received the letter "[o]n or about April 13, 2017."  (ECF No. 72-7 at 17, ¶ 5.)  This three-day gap does not change the Court's ultimate ruling.

[12]    Plaintiff swore to this date in her EEOC charge: "On or about June 16, 2017, Dr. Carolyn Daniels and I were required to attend a meeting with Mr. Jennings.  It was in that meeting that I was reassigned to the [OVSR], allegedly due to a recent CSC decision regarding a reclassification study performed on my PS 3 title."  (ECF No. 72-7 at 17, ¶ 6.)

Plaintiff did not meet either deadline.  Plaintiff filed her EEOC charge on April 19, 2018. (DSMF ¶ 75; ECF No. 72-7 at 15.)  And, not having the benefit of an opposition, the Court sees no equitable reason for disregarding this statutory requirement.[13]  As a result, Plaintiff may not assert Title VII claims based on her reclassification or reassignment.  *See Castellane-Jaconetta*, 2020 WL 1329905, at *5 (dismissing with prejudice untimely Title VII claims where plaintiff failed to justify equitable tolling).

The claims that remain are Plaintiff's NJLAD claims of discrimination and retaliation based on her reclassification and reassignment (Counts One, Two, & Three), as well as her Title VII and NJLAD claims of hostile work environment based on her supervisors' treatment towards her, all asserted against the NJDOH.  The Court addresses these claims in reverse order.

### C.   HOSTILE WORK ENVIRONMENT

For her Title VII claim of hostile work environment, Plaintiff must show the following: "1) the employee suffered intentional discrimination because of [her race or gender], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person [of the same race or gender] in like circumstances, and 5) the existence of *respondeat superior* liability."  *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)) (alterations in *Nitkin* omitted).  Indeed, Plaintiff had to demonstrate facts that could suggest that her workplace was "permeated with discriminatory intimidation, ridicule,

---

[13]   "Title VII's administrative timing requirements may be equitably tolled where: (1) the defendant has actively misled the plaintiff as to the cause of action; (2) the plaintiff has 'in some extraordinary way' been prevented from timely asserting [her] rights; or (3) the plaintiff has timely but mistakenly asserted [her] rights in the wrong forum."  *Castellane-Jaconetta v. Fornoro*, Civ. No. 19-13946, 2020 WL 1329905, at *6 (D.N.J. Mar. 23, 2020) (quoting *Word v. Potter*, 149 F. App'x 97, 99 (3d Cir. 2005)).

and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Shah v. Am. Airlines, Inc.*, Civ. No. 22-2599, 2023 WL 2945901, at *3 (3d Cir. Apr. 14, 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In support of her claim, Plaintiff alleges that "[w]hile working under [Koslow], Plaintiff was repeatedly harassed and accused of working on previous job obligations"; that "[v]erbal and electronic communications were disrespectful, and tasks assigned to Plaintiff . . . were geared towards clerical/support work, not professional activities that would fall within the scope of Plaintiff's job responsibilities"; and that "Koslow and [Arrisi] created a pervasive atmosphere of race [and gender] discrimination through their actions and words creating a hostile work environment." (ECF No. 1 ¶¶ 27, 38, 42.)

Even viewed in a light most favorable to Plaintiff, the record does not support that Koslow or Arrisi treated Plaintiff differently because of a protected class. At her deposition, Plaintiff described Koslow as a condescending, disrespectful bully, whose "tone was always abrupt," and who "talked at you, not to you or with you." (DSMF ¶ 49; Pl. Dep. 39:2-7.) She also testified, however, that she heard him talk to others in the same manner. (DSMF ¶ 50; Pl. Dep. 39:12-14.) Given that Koslow treated employees similarly — according to the undisputed record — this cannot support a claim of disparate treatment or discriminatory animus. *See Gress v. Temple Univ. Health Sys.*, Civ. No. 13-5414, 2018 WL 3970436, at *7 (E.D. Pa. Aug. 20, 2018), *aff'd*, 784 F. App'x 100 (3d Cir. 2019) (ruling that supervisor's "treat[ing] everyone in the same manner" precluded plaintiff from establishing a *prima facie* case under Title VII).

Plaintiff also admittedly could not say how Koslow created an "atmosphere of race discrimination": "I can't remember, I can't remember some of the specific actions that [Koslow]

16

did once I moved to the other side.  [Koslow], more so came after, he would harass me, but he would more so harass my team members.  I'm just going to say I don't know because I really can't remember."  (DSMF ¶ 69; Pl. Dep. 65:3-21; *see also id.* at 66:17-67:6.)  When asked about gender discrimination, Plaintiff testified that Koslow "would approach me and ask a question, it is his overall tone" — "[p]rimarily the tone he spoke," "how he was disrespectful" and "condescending," and that he "would raise his voice to me, ask me where certain things were."  (*Id.* at 65:22-66:16.)  Plaintiff added that Koslow "also liked to compare . . . the women in [my] team against people in his team[,] which included males."  (*Id.* at 66:12-16.)

Beyond Plaintiff's mere assertions of disparate treatment, there is no evidence to support that Plaintiff's race or gender factored into Koslow's comparing the teams.  Absent such evidence, Plaintiff's assertions amount to a "subjective belief," which cannot support a disparate-treatment claim.  *See Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013) ("A plaintiff's subjective belief that race played a role in an employment decision is not sufficient to establish an inference of discrimination.").  Indeed, to survive summary judgment, Plaintiff must present more than speculation.  *See Boykins v. SEPTA*, 722 F. App'x 148, 158 (3d Cir. 2018) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005))); *Nitkin*, 67 F.4th at 570 (holding that employee's generalized assertions of harassing conduct could not create fact issue so as to preclude summary judgment for employer on Title VII claim).

As to Arrisi, Plaintiff complains of his allegedly sending Plaintiff and her team "harassing . . . and condescending emails" about performing certain work duties.  (DSMF ¶ 63; Pl. Dep. 53:16-54:22, 55:8-11, 57:12-18.)  One such email prompted Plaintiff to file a Workplace Violence

Incident Report, in which she reported that she was "harassed for not correcting a client's vital records for a Local Registrar in the OVSR Vital Information Platform (VIP) during Ms. Yamileth Hernandez's (supervisor) absence."   (DSMF ¶ 65; ECF No. 72-8 at 10.)   Plaintiff's related testimony conveys her frustration with Arrisi's asking Plaintiff to complete tasks that she did not have the administrative permissions to complete.  (Pl. Dep. 53:22-57:18.)

But nothing in the record indicates that Arrisi's emails manifested the discrimination or severe or pervasive conduct needed to establish a claim for hostile work environment.  To the contrary, as Plaintiff's testimony makes clear, her issues flowed from a personality conflict with Arrisi.  Mere personality conflicts cannot support claims for hostile work environment.  *See Hoist v. New Jersey*, Civ. No. 12-5370, 2015 WL 4773275, at *22 (D.N.J. Aug. 13, 2015), *aff'd*, 642 F. App'x 169 (3d Cir. 2016) ("In short, personality conflicts between employees are not the business of the federal courts." (quoting *Waite v. Blair, Inc.*, 937 F. Supp. 460, 468 (W.D. Pa. 1995))); *Herman v. Coastal Corp.*, 791 A.2d 238, 249 (N.J. Super. Ct. App. Div. 2002) (rejecting claim for hostile work environment based on "complete breakdown in communication due to personality conflict");[14] *see Stovall v. Grazioli*, Civ. No. 20-2041, 2023 WL 3116439, at *2 (3d Cir. Apr. 27, 2023) (holding that supervisors' causing plaintiff "to feel insulted and embarrassed . . . raise[s] no overt or implicit suggestion that the [s]upervisors treated her differently because of her race").

---

[14]     *See also Kumar v. State of New Jersey*, Civ. No. 20-13927, 2021 WL 3769280, at *10 (D.N.J. Aug. 25, 2021) ("'Employees are not insulated from personality conflicts, favoritism, nepotism, or, for that matter, from most inequities encountered in the workplace,' and Title VII 'does not set forth a general civility code for the American workplace,' nor is it 'designed to purge the workplace of vulgarity.'" (quoting *Sykes v. Pennsylvania State Police*, Civ. No. 05-1349, 2007 WL 141064, at *5 (W.D. Pa. Jan. 17, 2007), *aff'd*, 311 F. App'x 526 (3d Cir. 2008); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995))).

Because none of Plaintiff's allegations or proofs creates an inference of discrimination that was severe or pervasive, Plaintiff's Title VII claim of hostile work environment fails.

### D.    NJLAD CLAIMS

Defendants argue that the Court lacks supplemental jurisdiction to decide Plaintiff's NJLAD claims because Defendants are immune from suit under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "Under the Eleventh Amendment, 'an unconsenting State is immune from suits brought in federal courts by [its] own citizens.'" *Hyatt v. Cnty. Of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Moreover, "the Amendment affords states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought." *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, Civ. No. 19-21389, 2020 WL 7237947, at *7 (D.N.J. Dec. 9, 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984), *aff'd sub nom.*, 858 F. App'x 558 (3d Cir. 2021)).

Critical here, the Eleventh Amendment protects not only states, but also state agencies and state officials acting in their official capacities, "as long as the state is the real party in interest." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989); *see Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) ("A suit against the States, their agencies, and their employees acting in an official capacity is also barred, because it is merely another way of pleading an action against the state."); *Hyatt*, 340 F. App'x at 836 ("Eleventh Amendment immunity applies to state entities and officials if 'the state is the real, substantial party in interest.'"

(citation omitted)).  "The party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'"  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

"Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001)).

"This Court has no jurisdiction to hear supplemental state-law claims against sovereign entities absent consent by the entity to suit in federal court." *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002); *see also Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 196 (3d Cir. 2008) (noting state-defendant's "removal from state to federal court waived its Eleventh Amendment immunity" as to "'state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings'" (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002))).  As a result, "a plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court." *Garcia*, 210 F. Supp. 2d at 550.  Indeed, "[a]lthough the NJLAD clearly identifies the State as a potential defendant and authorizes private suits 'in Superior Court,' it makes no mention of federal court." *Id.* (citing N.J. Stat. Ann. § 10:5-5(e); quoting N.J. Stat. Ann. § 10:5-13); *see Jasmin v. New Jersey Econ. Dev. Auth.*, Civ. No. 16-1002, 2018 WL 3617955, at *7 (D.N.J. July 30, 2018) (collecting cases ruling that "the State of New Jersey may not be sued under the NJLAD in federal court").

NJDOH, as an arm of the State of New Jersey, is entitled to Eleventh Amendment sovereign immunity.  *See Clark v. State of New Jersey Dep't of Health*, Civ. No. 12-7763, 2016

WL 4265724, at *4 (D.N.J. Aug. 12, 2016) ("[T]he Third Circuit has long held that the DOH is an arm of the State of New Jersey for sovereign immunity purposes.").[15]  Yet Plaintiff has not established that any of the exceptions to sovereign immunity apply here.  The Eleventh Amendment therefore bars consideration of Plaintiff's NJLAD claims against NJDOH in federal court.  Plaintiff's NJLAD claims are dismissed without prejudice.  *See Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020) (affirming summary judgment dismissal on Eleventh Amendment immunity grounds); *see also Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (holding that dismissal based on Eleventh Amendment immunity is a "threshold, nonmerits issue" and should be without prejudice).

## IV.    **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendants' motion for summary judgment (ECF No. 72) is **GRANTED**.  Plaintiff's Title VII claims in Counts One & Three, including for racial discrimination, retaliation, and hostile work environment, are **DISMISSED** with prejudice.  Plaintiff's NJLAD claims in Counts One, Two, & Three are **DISMISSED** without prejudice.  An appropriate Order follows.

Dated: September 28, 2023

*s/ Georgette Castner*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

---

[15]    Courts have consistently ruled that NJDOH is an arm of the State.  *See, e.g.*, *Aerated Prod. Co. v. Dep't of Health of N.J.*, 159 F.2d 851, 853 (3d Cir. 1947); *Rouse v. New Jersey Dep't of Health & Hum. Servs.*, Civ. No. 15-01511, 2015 WL 5996324, at *2 (D.N.J. Oct. 13, 2015); *Mercer Cnty. Childrens Med. Daycare, LLC v. O'Dowd*, Civ. No. 13-1436, 2014 WL 546346, at *3 (D.N.J. Feb. 10, 2014); *Rahman v. Taylor*, Civ. No. 10-0367, 2010 WL 2178938, at *6 (D.N.J. May 27, 2010).